JOHN MALTBY v. ANN R. GREENE.

No appeal lies from a judgment by default.

In matter of mechanics' lien in the county of Erie, the court acquires jurisdiction of the subject-matter by the personal service of the notice required by statute upon the opposite party within the time required by law.

The judgment in this case was rendered in the county court of Erie county, on 30th April, 1859, under the provisions of the mechanics' lien law. The specifications and papers required by the statute were filed in the clerk's office, on 24th December, 1858. On 23d of February, 1859, a notice requiring the defendant to appear in the county court, on the fourth Monday of March, and submit to an accounting, was served on defendant, dated 22d February, 1859. The affidavit of service of notice states the service to have been made 28th March, 1859. The defendant did not appear on the day fixed in the notice, and judgment by default was entered, and the damages were assessed on a writ of inquiry, and final judgment entered against the defendant. From this judgment the defendant appealed to the General Term of the eighth district, where the appeal was dismissed. From that order of dismissal, the defendant appealed to this court.

*R. Saunders*, for the appellant.

*Charles Daniels*, for the respondent.

INGRAHAM, J. That an order dismissing an appeal to the General Term of the Supreme Court is appealable to this court, was settled in *Bates v. Voorhees* (20 N. Y., 525). In becomes, therefore, necessary to inquire whether an appeal will lie from the judgment entered in the county court, by default of the defendant for not appearing there.

This question was referred to by SELDEN, J., in *Briggs et al. v. Bergen* (23 N. Y., 162), in which he says in regard to striking out a sham pleading: "The suit is left in the same condition as if no answer had been put in. In such

cases no appeal will lie from the judgment, it having been obtained through the default of the defendant."

This question was fully examined by PARKER, J., in *Dow v. Birge & Wells* (5 How. Pr., 323), citing various cases previous to the Code to show that, under the old system of practice, a writ of error would not lie from a judgment obtained by default. The intent of the Code was the same as had been the previous practice. It allowed an appeal from a judgment of the court, but by that was intended a decision of the court made upon points submitted to them, or questions raised before that court.

In *Jones v. Kip* (7 N. Y. Legal Observer, p. 91), it was held, in New York Common Pleas, that no appeal would lie to the General Term of that court from a judgment by default.

In *Perkins v. Farnham* (10 Howard, 120), it was decided that an appeal would not lie from a judgment entered on a stipulation, with a view to enable the party to appeal.

In *Hunt v. Bloomer* (3 Kern., 343), an appeal was dismissed, upon the ground that the record did not show any exceptions taken at the trial, and in *Otis v. Spencer* (16 N. Y., 610), the judgment was affirmed, because no case had been made in the court below. From these cases, I conclude that no different rule exists under the Code than that which was established under the old system of practice. And this court has held, in *Thurbet v. Townsend* (22 N. Y., 517), that the power of review conferred by the Code must be the same as that formerly obtained by writ of error, and that there was no reason why it should be other or greater.

I think, therefore, from the authorities above cited, that in no case of judgment by default can there be an appeal to an appellate tribunal; but that the aggrieved party must seek relief, if he be entitled to any, by motion to the court in which the action is pending. If there was any error in the service of process, the court where the action was pending could have corrected the error on motion. If the pleadings were defective, the party aggrieved had a remedy by demurrer, and on that he might have appealed to the appellate court.

The reason for these rules is given by PLATT, J., in *Adams v. Oaks* (20 Johns., 282). When the law allows a defendant the privilege of being summoned, it imposes on him a corresponding duty, which is, if he has any ground of defense he shall appear and prove it in the primary court having cognizance of the matter. To allow him to pass by the inferior tribunal unnoticed, would be to convert the appellate court into one of an original jurisdiction. A judgment by default is, for this purpose, equivalent to a judgment by confession. This doctrine is well settled in the higher courts, and I perceive no reason why it should not be applied to all judicial proceedings where an appeal is allowed.

The conclusion arrived at in this branch of the case disposes of this appeal without the necessity of examining the alleged defects upon which the appeal was taken. They were all matters which should have been brought to the notice of the court below. Many of them, if they were erroneous, would have been corrected on the trial, and would not have been any grounds for sustaining an appeal. It can hardly be considered a safe or proper system to allow a party to rely on a defective pleading in the court of original jurisdiction, and seek to take the benefit of such defect on appeal where the court could not correct the error. On the contrary, I concur in the opinion above cited that in such cases the default in not appearing is to be considered a confession of judgment, from which the defendant cannot appeal. The order should be affirmed.

WRIGHT, J. This is an appeal from an order of the Supreme Court dismissing an appeal from a judgment of the Erie county court, rendered by default in a proceeding under the mechanics' lien law (Laws of 1844, chap. 305). All that the Supreme Court had before it was the record of the judgment of the county court for the amount of the claim of the party furnishing materials.

The Supreme Court dismissed the appeal on two grounds: first, that it would not lie to review a judgment rendered by the county court by default; and, second, that if this were

otherwise, there was no error or irregularity in obtaining the judgment, or, at least, none of a jurisdictional nature. The order, I think, is right on either ground, but it is, perhaps, only necessary to allude to the latter one.

The act of May 7, 1844, declares that any person performing labor or furnishing materials for building, altering or repairing any house or other building, in the several cities of the State (except the city of New York), by virtue of any contract with the owner thereof, shall have a lien for the value of such labor and materials, upon such house or building, and upon the land upon which the same stands (§ 1); and it prescribes the mode of creating such lien, its duration, and how it may be discharged. (§§ 2, 3.) The person performing the labor, or furnishing the materials, is to cause specifications to be drawn up, and file the same in the office of the clerk of the county in which the building or premises are situated, and serve notice thereof personally on the owner or his agent. The filing of the specifications, and serving notice thereof, in respect to any labor performed, or to be performed, or materials furnished, or to be furnished, in building, altering or repairing any house, or other building, in the city of Buffalo, may be made at any time prior to thirty days after the labor shall be performed, or after the house or building or the alterations or repairs of which shall be completed; and the filing of the specifications and service of the notice creates a lien in favor of the person performing such labor, or furnishing such materials, for the amount of the labor performed and materials furnished, whether performed or furnished before or after such filing and service. (Laws of 1851, chap. 517.) The clerk of the county is directed to keep a book, to be called " The mechanics' and laborers' lien docket," in which shall be entered the name of the owner, and opposite thereto the name of the person claiming the lien, the lot or street on which such work is to be done, or materials furnished, and the time of filing such specifications. The lien created takes effect from the time of filing and service of notice, and continues for one year thereafter, but may be discharged on the docket at any time

by the clerk, on the production to and filing with him a certificate, signed by the person having the lien, and duly acknowledged and proved, that the claim for which such lien was created is satisfied and discharged. (§ 3.)

The next four sections of the act prescribe the manner of enforcing or bringing such lien to a close. It is by a proceeding in a county court, or justice's court, distinct and independent of that creating the lien between the claimant and the owner, to settle the amount due, and obtain a judgment therefor. As was said in *Freeman* v. *Crane* (3 Comst., 305): " The court is not required to adjudicate upon the validity of the lien, or the time of its commencement. The judgment is to be rendered and enforced, in all respects, like a judgment in an action of assumpsit. * * The judgment record is not evidence of the existence of the mechanics' lien, of the time of its commencement, or of the quality or description of the real estate which it affects. It could not be made so against third persons not parties to the suit. In case of the enforcement of the lien by an execution, and sale within the year, if a dispute should arise between the purchaser and some third person, with respect to the priority of their respective rights, the purchaser would be required to prove the existence of the mechanics' lien by evidence not contained in the judgment record." The most that can be claimed is, that there is a statutory implication that the summary proceeding for obtaining judgment for the amount due, must be instituted before the lien ceases.

The court acquires jurisdiction of the subject-matter, and of the parties, by either the owner of the building, or the laborer or material man, serving personally on the opposite party, a notice, requiring him to appear in the county court or justice's court of the county in which the building is situated, at a time specified in such notice, not less than twenty days from the service thereof, and submit to an accounting and settlement in such court of the amount due or claimed to be due, or for the labor performed or the materials furnished. In this case the claimant served the required notice on the owner to appear in the Erie county court, on the

fourth Monday of March, 1859 ; and at the time, served on her a bill of particulars of his claim, accompanying the same with a notice to produce a bill of particulars of any offset within ten days thereafter. The owner did not appear at the time and place specified, or furnish any bill of particulars of any offset, and on the 22d April, 1859, her default was entered, and a writ of inquiry ordered to issue. The writ was executed and inquisition returned, assessing the claimant's damages at $83.84, and an order for judgment final entered thereon on the 26th April; and on 30th April, judgment for that amount, with costs, was signed and filed. The proceeding in the county court was strictly in accordance with the statute, which provides that in case the owner shall not appear and submit to an accounting and settlement at the time and place specified in the notice, his default shall be entered; a writ of inquiry and inquisition may issue to the sheriff of the county, to be executed; " and judgment shall be entered upon the same, and execution shall issue for the enforcement of the claim so adjudicated and established, in the same manner as in cases upon judgments in such courts, in actions of assumpsit." (§§ 4, 5, 6.)

It is not or cannot be claimed by the appellant, that the Supreme Court erroneously dismissed her appeal, unless from the face of the record of the county court, it appears that that court had no jurisdiction of the subject-matter, or entered a judgment unauthorized by the statute. Neither of these things appeared. The notice to appear and account, etc.; gave jurisdiction, and the proper judgment was rendered and entered. The point is made that it does not appear by the record that the incipient proceedings to create a lien were ever taken. It is not required that it should; and following the statute directions as to the accounting, and rendition and entry of judgment, the fact would not necessarily appear by the record. But it does, in fact, appear both by the recitals in the writ of inquiry, and in the judgment. Again, it is said that by the record it appears that the notice requiring the defendant to appear and submit to an accounting and settlement, was not served twenty days before the time speci-

fied for the appearance in the county court. It does appear by the copy affidavit of the service of the notice filed when the defendant's default was entered (as it is printed in the case), that the service was less than twenty days before the time designated for the appearance, accounting and settlement; but the order for the defendant's default, in reciting the proofs on which it was granted, states that the notice was served more than twenty days prior to the time specified for appearing, and to the same effect is the recitals in the writ of inquiry and in the judgment. Undoubtedly, the statement of the date of service is erroneously set forth in this affidavit. The notices are dated the 22d February, 1859, and the time designated for appearance was the fourth Monday of March following. The affidavit states the service to have been on the 28th March, the very day for appearing. It is most probable that the month of service was February instead of March; and, either that in the affidavit, March was, by mistake, inserted for February, or that the affidavit is given incorrectly in the case. At all events, looking at the whole record, it does not appear, as the appellant's counsel insists, that the notice and the bill of particulars were served on the defendant the very day she was required to appear in court. Again, it is claimed that the proceeding and judgment warranted by the statute, are *in rem* against property, and not against the person; and that the entry of a personal judgment was unauthorized. There is nothing in this point. The statute provides, that in case of a default, a writ of inquiry may issue for the assessment of the damages, " and judgment shall be entered upon the same, and execution shall issue for the enforcement of the said claim so adjudicated and established, in the same manner as in cases upon judgments in courts of common pleas and justices' courts, in actions of assumpsit;" and where the parties appear, the cause "shall be governed, tried, and the judgment therein enforced, in all respects, in the same manner as upon issues joined and judgments rendered in actions of assumpsit in the said court." (§§ 6, 7.) Judgments in actions of assumpsit are, in form, personal, and the manner of

enforcing them is by execution. When the judgment is to be enforced in the same manner, it can hardly be claimed that it should be different in form from the ordinary judgment in assumpsit. The mode of enforcing it indicates what its form should be. In *Freeman* v. *Cram* (3 Comst., 305), it seems to have been the construction of the statute by this court, that the judgment is to be rendered in form against the defendant, who is personally liable for the debt, and is a lien upon all the defendant's real estate, continuing for ten years against purchasers, and longer against the defendant himself.

The record of the county court, therefore, discloses no error, jurisdictional or otherwise. But after jurisdiction was acquired, had there been irregularities, the place to correct them was in the county court, and not on appeal. If the appellant had any cause of complaint, she should have moved in that court, where the proceedings, if not strictly regular, could have been corrected, and where amendments would have been permitted if necessary, for the purpose of correcting any mistakes in the papers.

The Supreme Court examined the record, and, finding no error or irregularity in the proceedings going to an entire want of judgment in the county court, dismissed the appeal. Perhaps the better course would have been to have affirmed the judgment. But the defendant's right of appeal to this court was equally secured by either practice.

The order should be affirmed.

All concur in affirmance on the several grounds stated by WRIGHT and INGRAHAM, JJ., except MULLIN, J.

Affirmed.